Good morning. Good morning. May it please the Court, Tracy Dressner for Petitioner, Robert Johnson. I want to start by acknowledging I understand that there are very strict guidelines under the AEDPA and particularly as it relates to claims of ineffective assistance to counsel. But those standards are not insurmountable, and I think this case is one that falls within that not insurmountable standard, particularly in a case where we have a summary denial from the state court. We have nothing to know what they decided. And again, the pleading standard at the state court level is only to prove a prima facie case, which I believe Mr. Johnson did. The need for a gang expert in this case was there were two red flags that indicated very sharply that there was a need for a gang expert. Let me just ask you this, counsel. Let's assume you're absolutely right that the gang expert might have been able to show that because of the breakup of the gangs that this couldn't possibly have been for the benefit of the group. It doesn't in any way address the inassociation with portion of the statute, does it? It absolutely does because the first prong of 186.22a, the gang statute, requires that there be at the direction of, in association with, or for the benefit of a criminal street gang. And then there's all this criteria for what constitutes criminal street gang, including proving predicate crime. There's no dispute that MD-13 is a criminal street gang, so does the defendant have to be a member of MD-13 in order to commit a crime in association and for the benefit of that gang? Mixing two different points. He does not need to be a member of the gang. But there was not the prosecution has the burden of proving the criminal street gang, and the only predicate crimes that were introduced at this trial involved MD-K and not MD-13. There was no evidence presented at trial that either MD-13 or the Riverside Skinheads were criminal street gang. You can't just say, well, these are gangs and they must meet the criteria. It's very strict what you need to prove, including at least the two predicate crimes, and the two predicate crimes were only MD-K. Counsel, forgive me, but I'm looking at ER-35, and I'm quoting what the magistrate judge said. He said there is ample evidence to support the conclusion the petitioner committed the home invasion robbery in association with a criminal street gang as he acted with individuals he knew were MD-K or MD-13 gang members. The magistrate judge was incorrect. That's not what the law is in California. Okay, putting aside the law, let's talk about the facts for a minute. How do we review what the validity of the factual determination made by the magistrate judge? What standard of review do we apply? It's clear error, and it's clear error. Okay, and why is that clear error? It's clear error because there's no evidence to back up what the magistrate judge said. The only evidence that was brought out at trial was related to MD-K being a criminal street gang. That is all the evidence showed. The prosecution's own gang expert called MD-K, MD-13, and the Riverside Skinheads separate entities, said it repeatedly. Say they are separate entities. That goes for the benefit of, but say they broke up. If this guy had been part of the gang, and he admitted he was at one point, but the reality is he knew and I think said that both were involved here, did he not? But that, Your Honor, there are two. They still remained a unified group. Is that really the issue here? Your Honor, the 186.22 says there's two elements. One is that the defendant committed a felony for the benefit of, at the direction of, or in association with any criminal street gang. That's one. The other is that he did so with the intent to promote further or assist in criminal conduct by gang members. Use two different languages, gang members, criminal street gang. What the magistrate judge did was coalesce those two. California's law is clear, and if you need some assistance with it, the California Supreme Court in People v. Prunty, a case I cited in my reply brief, which came out after the opening brief, makes this point abundantly clear. The court said that the criminal street gang that committed the predicate offenses and engaged in the criminal primary activities must be the same criminal street gang that the defendant sought to benefit or worked at. Yeah, they said it was axiomatic. But that's for the benefit of that gang. It doesn't even address the in association with, does it? Your Honor, you're simply, with all due respect, you're simply wrong on the law. There's two different elements. It's true. If he committed this robbery, he did it with gang members. That's element two. The first element requires that he do it, even if he does it in association with, it has to be a criminal street gang. And the only criminal street gang that was established at the trial was MDK. But the evidence at trial was that the other four members, two Hispanics, two Caucasians, were members of MD13. You're saying that there was an evidence that there were predicate crimes specifically connected to MD13. Exactly. The prosecution never proved that MD13, never even made an attempt to prove that MD13 or the Riverside Skinheads were a criminal street gang. And it's not sufficient that it was a predecessor organization that had the predicate offenses. That's your argument. It may or may not have been, but we don't, the jury never got a chance to even consider that as an option because the trial attorney, first of all, she never even addressed the gang enhancement in her closing argument, not once. This is a case where Mr. Johnson is serving a life sentence as opposed to a maximum term of nine years because of the gang enhancement.  Let me ask you this, counsel. If she had called an expert in the defense case, what would that expert have established beyond what she was able to get out of cross-examination? It seems like there's substantial, if not nearly identical, complete overlap, and she got what she needed out of cross-examination. Now, you mentioned the standard of review. It's double deference as to reasonableness of that judgment. Your Honor, we don't know the full scope of what she could have established because she never did the investigation. She never talked to anyone who was familiar with Riverside Gangs. Who does she talk to? Somebody from Los Angeles. And then she says, well, I can't use him because he doesn't ---- But now you're here on habeas, so you've got to demonstrate that if she had called an expert, she would be able to establish X and she didn't get that information out of cross-examination. So what would that X be? There's two plus points to that. One is that MDK ceased to exist by the year 2003 when this crime was committed. MDK no longer existed. Two, that MD-13 associated with Mexican Mafia and the Riverside Skinhead associated with the Aryan Brotherhood would never have committed a crime together as gang members. Let me ask you this. I get your point about the gang expert. We'll weigh that. But we're on EDPA, as you point out. And in this case, the defense strategy was to prove innocence, actual innocence. No, the defense ---- ER-33. That was the defense attorney. I get that. But that was the strategy. And we're here on ineffective assistance counsel that that was insufficient. You have the gang enhancement was the critical factor. Counsel, with respect, when you're talking to a court of appeal, it's better not to talk over our questions. I'm sorry. I thought you had ended. My apologies. My question is this. Since the record shows that it was the strategy of the defense lawyer to prove actual innocence, on what basis would it be unreasonable for the counsel to have elected as a strategy not to call a gang expert because it would have completely been at odds with the primary defense? It was not at odds with the primary defense. Her strategy was arguing that he was innocent of the robbery, which, frankly, was never going to fly. But that doesn't lead ---- there's nothing inconsistent with also arguing that there was no gang enhancement. And the gang enhancement was the primary charge. That's what got him the life sentence. You can't just say, well, I'm going to argue that you're innocent of the lesser crime, and then we're going to leave it at that. There's nothing inconsistent with saying you're innocent of the robbery and there was no gang enhancement. Nothing wrong with that. It's a strategy that ended up with Mr. Johnson serving a life sentence. Do you want to say any of your things? I would, yes. Please. Oh, please. Oh, I'm sorry. One question. Your claim is ineffective assistance of counsel. Yes. And I'm gathering that that includes not just calling the gang expert, but consulting with the gang expert to find out stuff, calling the gang expert, having information from the gang expert to cross-examine the prosecution's expert, and making that gang expert's attack during the course of the closing argument and other portions of the trial. Is that ---- Absolutely. Absolutely. And if I could add that, again, at the state habeas, it was a pleading prima facie case. Mr. Johnson has regularly, both in state court and federal court, also sought discovery that his attorney could have sought had she ever employed a gang expert. That might have answered more specifically other items that the gang expert ---- that could have been used to either cross-examine the gang expert or to put her own gang expert on.  Thank you. We'll give you a little bit of rebuttal time. Thank you. Okay. Let's hear from the government. May it please the Court, Deputy Attorney General Kathryn Kirschbaum for respondent. The state court's denial of Mr. Johnson's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law. Under Strickland v. Washington, the decision not to call a defense gang expert had no prejudicial effect on Mr. Johnson's trial. The only way that a defense gang expert could have had an effect on Mr. Johnson's trial was by presenting ---- would be by presenting credible evidence to counter the prosecution evidence as to the gang enhancement. There are two ways that a gang expert for the defense could have done so. First, by proving that MDK had ceased to exist and was not a criminal street gang at the time of these crimes, or by providing evidence that even if MDK existed, this robbery did not benefit MDK and was not in association with MDK. What was the government's position, though? What was the gang for which the predicate acts were proved? MDK. The gang expert explicitly testified that MDK was a gang and was a criminal street gang comprised of MD13 and RSSH, but still existing and still active at the time of the crimes, even though members identified with these various groups split along racial lines. And what would be your cite for that? I mean, he was somewhat inconsistent using MDK and MD13 interchangeably at certain points. He said that he did that. What's your strongest point that he actually said MDK still exists and this was done for the benefit of MDK? At page 1103 of the reporter's transcript, the gang expert, Detective Simons, testified explicitly that MDK in its current formation, these two branches, MD13 and RSSH, is a criminal street gang. And so to return to the gang expert, the gang expert would have had to prove that that was not true or provide credible evidence that MDK had ceased to exist. That would have been completely contrary to the facts. The most important fact on that point is that the victim testified that at the time of the robbery, more than one of the perpetrators made reference to MDK at the time of the robbery, and that's at SCR 47. Two of the perpetrators, Mr. Guevara and Mr. Fulton, told police that they were members of MDK, and one of them, Mr. Fulton, admitted that he told police that he was a member of MDK and that MDK was still active at the time of the robbery. There was also evidence of items found with MDK on it in possession of some of the perpetrators, including the letter from Mr. Fulton. And the gang expert also testified that he still sees, even after the time of the robbery, that he, at the time of trial, still saw MDK graffiti alongside of RSSH graffiti. So there was ample evidence that MDK was still a gang, was a gang at the time of the robbery, and so the gang expert would not have been able to have provided evidence to counter that. Was that the way the prosecution argued the point at closing, that these predicate offenses were associated with MDK, and despite the fact that they had started to dissolve in the 2000s into two different groups, that it was still an ongoing organization and the robbery was for the benefit of MDK? Yes. Did the closing argument get to that level of specificity? In terms of the predicate offenses, I believe it did, Your Honor. The prosecutor went to great lengths to prove that both predicate offenses were MDK offenses. That came up a couple of times at trial, where there was possible evidence that one of the predicate offenses was really an MD13 offense, and the prosecutor revisited that point with the gang expert and said, no, no, no, this was before the split, this was an MDK crime. It's true that oftentimes there was kind of general argument as to these three gangs, and there was some interchanging of their titles, but that's because the prosecution's position was that MDK was a criminal street gang comprised of two different factions. Well, didn't the prosecutor at least a number of times say these were gang members, he did this with gang members, that's enough, that's all we need, we need association with gang members? And some of those comments, it seems, were picked up by the magistrate judge in the district court. All we need is association with gang members, which I think, or would you agree, actually isn't the right test. We need association with a criminal gang, the criminal gang that committed the predicate acts. I do agree. Several different questions in there. I agree. The jury was properly instructed on all of the elements for the gang statute, and the predicate of crimes, the primary activities, all of that was met. The prosecutor did state in his closing argument in association with gang members rather than in association with a criminal street gang, but I think there was no way for the jury to have misunderstood what it needed to do, which was to find that this crime benefited or was in association with a criminal street gang. Did the defense object to any of the jury instructions regarding the definitions of criminal street gang or criminal gang? No, Your Honor. Okay. The only other way that the gang expert could have had an effect on this trial and what proposed gang expert Hecht attempts to do in his declaration is say, all right, even if MDK still existed, this wasn't a gang-related crime. But that testimony, if presented, wouldn't have been given any credence by the jury. The whole premise of the gang expert's testimony is that skinheads and members of a Mexican Mafia-connected gang would never commit a crime together. But that fact was undisputed in this case that that is what happened. Well, that they wouldn't commit a crime together as representatives of their gang. Exactly. And the fact that if they were friends, they might be on a little frolic of their own to, for example, pay back Johnson for money that he said Huddleston owned him, owed him as opposed to a joint gang, joint venture gang activity. But if you accept the premise that MD13 and RSSH would never commit a crime together as gang members, it simply- As gangs. As gangs. Well, as members of their gang, it simply doesn't make sense that they'd be permitted to go ahead, you can commit a crime together just as long as it doesn't benefit us or just as long as it's not in association with us. That simply doesn't make sense. The jury wouldn't have given any weight to that argument. And it was countered by the fact that they were calling out MDK during the commission of the robbery, as the victim testified to, that they made reference to MDK. So this wasn't- Let me ask you about the Prunty case. The defense relies a lot on that. Now, that case was decided in 2015. This case was heard in 2007, right? Yes. So under AEDPA, what role, if any, does Prunty play in our analysis? I don't believe that Prunty plays any role in this analysis, not only to do with the timing of it, but because of the facts. Prunty, and the Prunty court explicitly stated that Prunty only applied when the existence of a gang was dependent on activities of the subsets. And that's not the case that we have here. The primary activities and the predicate offenses were MDK offenses, not offenses by various subsets. In Prunty, the subsets that were the predicate offenses weren't even the subsets that were involved in the crime in any way. And so it's a different factual situation. So here, regardless of whether Prunty applies, because of what you believe were proven facts, admissions, statements made during the commission of the crime, and so on, wipes away any benefit that Prunty would otherwise have provided, even if it had been timely. Correct. And even if Prunty applies, I think that there was sufficient evidence under Prunty. Prunty only talks about needing to provide evidence of some sort of connection or organizational connection among the subsets. And basically, here, since it's an IAC claim, we've got two prongs. One, whether there was malpractice, basically. And you're saying there wasn't any, because based on the law at the time and based upon the facts proven, there was no problem in the defense lawyer raising or asking for a defense gang expert. And secondly, even if there were one should have been asked for under better practices, there was no prejudice. Yes. My argument has focused largely on the prejudice prong that no gang expert, Mr. Hecht or any gang expert, would have been able to have had a beneficial effect on Mr. Johnson's trial in light of the facts and the evidence. Another remedy that counsel asked for might be an evidentiary hearing to bring out what discovery there would have been had counsel gotten an expert in that sort of thing. What would you say to that? Appellant, Mr. Johnson would not be in any more favorable position if given an evidentiary hearing. If I may briefly answer your question, my time is up. Go ahead. There's nothing more that an evidentiary hearing could have done. Mr. Hecht had every opportunity to provide everything that he could have said in his declaration without being subject to the rigors of cross-examination. The inconsistencies and the factual problems with that argument only would have been highlighted at an evidentiary hearing. We don't have the full transcript of the Marsden hearing, I don't think. At least I couldn't find it. Do you have the full transcript of the Marsden hearing? I do not. I believe that only select portions were released by defense counsel. Thank you, counsel. Thank you. We'll give you a minute for rebuttal. Mr. Hecht was a Riverside police officer for almost 25 years. He spent over seven years in the gang. He said unequivocally in his declaration that MDK did not exist in 2003. It would be pretty hard to say how you'd put on an expert that says that at trial and not say that might have given some pause to the jury who had to find that MDK, that all of these other four people who were involved were MDK members in order for the prosecution to have met its burden of proving the criminal street gang element. The fact that the DA keeps using these interchangeably while at the same time saying they're separate entities, and he even at pages 1139, 1140, and 1144 of the reporter's transcripts, he keeps referring to them as MDK slash RSSH. He doesn't distinguish them. At page 1241 in the closing argument, the DA says the benefits were financial and to increase the street turf of MDK, the skinheads, MB13. He doesn't distinguish between them. And MDK is the only one that mattered. Mr. Johnson has presented expert testimony that says MDK did not exist, and it's pretty hard to say that that would not have made a difference to the jury. Thank you. Thank you very much. Thank both of you for your vigorous arguments. We thank you. The case just argued is submitted.
judges: M. Smith, Nguyen, Wilken